J-A27001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROXANNE STONE, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JACQUELINE HILL | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : : | |
| LYSTN, LLC, FOOD FOR LIFE TRUCKING AND LOGISTICS COMPANY, INTEGRATIVE GREEN SOLUTIONS, INCORPORATED, BIODYNAMIC FARMS, LLC   LYSTN, LLC, FOOD FOR LIFE TRUCKING AND LOGISTICS COMPANY, INTEGRATIVE GREEN SOLUTIONS, INCORPORATED, BIODYNAMIC FARMS, LLC | : : : : : : : : : : : : : : | No. 1402 MDA 2021 |
| v. | : : : : : : | |
| ROXANNE STONE, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JACQUELINE HILL, AND INITIAL, LLC, CONSTANZIA LEVITSKY AND COCOVINNA, LLC | : : : : : : : : : : : | |
| APPEAL OF: ROXANNE STONE, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JACQUELINE HILL | : : : | |

Appeal from the Order Entered October 21, 2021
In the Court of Common Pleas of Berks County Civil Division at No(s):
21-11790

| | | |
|---|---|---|
| ROXANNE STONE, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JACQUELINE HILL | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| | : | |
| LYSTN, LLC, FOOD FOR LIFE | : | No. 1403 MDA 2021 |
| TRUCKING AND LOGISTICS | : | |
| COMPANY, INTEGRATIVE GREEN | : | |
| SOLUTIONS, INCORPORATED, | : | |
| BIODYNAMIC FARMS, LLC   LYSTN, | : | |
| LLC, FOOD FOR LIFE TRUCKING AND | : | |
| LOGISTICS COMPANY, INTEGRATIVE | : | |
| GREEN SOLUTIONS, | : | |
| INCORPORATED, BIODYNAMIC | : | |
| FARMS, LLC | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ROXANNE STONE, INDIVIDUALLY | : | |
| AND AS EXECUTRIX OF THE ESTATE | : | |
| OF JACQUELINE HILL AND INITIAL, | : | |
| LLC, CONSTANZIA LEVITSKY AND | : | |
| COCOVINNA, LLC | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: INITIAL, LLC | | |

Appeal from the Order Entered October 21, 2021
In the Court of Common Pleas of Berks County Civil Division at No(s):
21-11790

|  |  |  |
|---|---|---|
| ROXANNE STONE, INDIVIDUALLY | : | IN THE SUPERIOR COURT OF |
| AND AS EXECUTRIX OF THE ESTATE | : | PENNSYLVANIA |
| OF JACQUELINE HILL | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LYSTN, LLC, FOOD FOR LIFE | : | No. 1254 MDA 2022 |
| TRUCKING AND LOGISTICS | : | |
| COMPANY, INTEGRATIVE GREEN | : | |
| SOLUTIONS, INCORPORATED, | : | |
| BIODYNAMIC FARMS, LLC   LYSTN, | : | |
| LLC, FOOD FOR LIFE TRUCKING AND | : | |
| LOGISTICS COMPANY, INTEGRATIVE | : | |
| GREEN SOLUTIONS, | : | |

INCORPORATED, BIODYNAMIC                :
FARMS, LLC                                          :
                                                          :
                                                          :
                                                          :
                    v.                              :
                                                          :
                                                          :
                                                          :
ROXANNE STONE, INDIVIDUALLY           :
AND AS EXECUTRIX OF THE ESTATE       :
OF JACQUELINE HILL AND INITIAL,         :
LLC, CONSTANZIA LEVITSKY AND           :
COCOVINNA, LLC                               :
                                                          :
                                                          :
                                                          :
APPEAL OF: ROXANNE STONE,               :
INDIVIDUALLY AND AS EXECUTRIX         :
OF THE ESTATE OF JACQUELINE HILL

Appeal from the Order Entered August 16, 2022
In the Court of Common Pleas of Berks County Civil Division at No(s):
21-12890

ROXANNE STONE, INDIVIDUALLY           :      IN THE SUPERIOR COURT OF
AND AS EXECUTRIX OF THE ESTATE       :             PENNSYLVANIA
OF JACQUELINE HILL                          :
                                                          :
                                                          :
                                                          :
                    v.                              :
                                                          :
                                                          :
                                                          :
LYSTN, LLC, FOOD FOR LIFE                 :      No. 1255 MDA 2022
TRUCKING AND LOGISTICS                   :
COMPANY, INTEGRATIVE GREEN           :
SOLUTIONS, INCORPORATED,               :
BIODYNAMIC FARMS, LLC   LYSTN,       :
LLC, FOOD FOR LIFE TRUCKING AND      :
LOGISTICS COMPANY, INTEGRATIVE      :
GREEN SOLUTIONS,                            :
INCORPORATED, BIODYNAMIC             :
FARMS, LLC                                          :
                                                          :
                                                          :
                    v.                              :
                                                          :
                                                          :
                                                          :

- 3 -

J-A27001-24

ROXANNE STONE, INDIVIDUALLY     :
AND AS EXECUTRIX OF THE ESTATE   :
OF JACQUELINE HILL AND INITIAL,  :
LLC, CONSTANZIA LEVITSKY AND     :
COCOVINNA, LLC                   :
                                 :

APPEAL OF: INITIAL, LLC

Appeal from the Order Entered August 16, 2022
In the Court of Common Pleas of Berks County Civil Division at No(s):
21-12980

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, P.J.:                 **FILED: JULY 1, 2025**

Roxanne Stone (Stone) and Jacqueline Hill (Hill) (at 1402 MDA 2021) and Initial, LLC (at 1403 MDA 2021) (collectively, Appellants) appeal from the October 21, 2021 order, entered in the Court of Common Pleas of Berks County, granting special and preliminary injunctive relief in favor of Lystn LLC, Biodynamic Farms, LLC,[1] Integrative Green Solutions, Inc.,[2] and Food for Life Trucking and Logistics Company, Inc. (collectively, Lystn Parties) and the August 16, 2022 order denying Appellants' petitions for a preliminary injunction.  We affirm.

In 2009, Stone and the now-deceased Hill co-founded Lystn, LLC (Lystn), a Delaware limited liability company that develops, formulates, manufactures, sells, and distributes fermented raw pet food—in particular, its

---

[1] Biodynamics is a limited liability company created to hold patents and other intellectual property used in the business operations of Answers.

[2] Integrative is a for-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located in Berks County.

- 4 -

proprietary petfood, ANSWERS™.[3]   Food for Life Trucking and Logistics Company (F4L), Integrative Green Solutions, Inc. (IGSI), and Biodynamic Farms, LLC are all controlled by Lystn or under common control by Lystn.   In August 2009, Stone was hired as an independent consultant for Lystn, and then, later, became a Lystn employee.

In April 2010, Stone and Hill executed an LLC Operating Agreement (Agreement)[4] for Lystn that designated its members[5] were permitted to serve a "transfer notice" if they wished to resign and transfer their membership interest to another member.   *See* Complaint (21-11790), 7/21/21, at ¶¶ 11-12, 72.   The Agreement also contained a non-compete clause providing that "all Members may, notwithstanding this [A]greement, engage in whatever

_____

[3] Derrick Hill (Derrick), Jacqueline Hill's son, formed Answers Pet Food with the help of his mother and father, Keith A. Hill.   Derrick was the "sole owner and acting president" of Answers prior to it becoming an LLC and having new members join the Lystn business venture.   Keith eventually became the Chief Executive Officer and President of Answers, LLC.

The trial court and parties use Answers+ and Answers interchangeably in the matter when referring to Lystn's brand name pet food.   For consistency, we will use the term "Answers" to represent Answers Pet Food brand throughout our decision.

[4] The Agreement was the governing document for Biodynamic's business affairs.

[5] Members were designated as being in "Class I" or "Class II."   Class I members were permitted to make capital contributions "both in cash and in the form of an assignment of intellectual property, business and industry contacts, and goodwill," actively participate in the operation of the company's business, and receive compensation and benefits.   *Id.* at ¶ 12.   Class II members, on the other hand, were not entitled to make capital contributions other than in cash, participate actively in the operation of the company's business, or receive compensation or benefits.   *Id.*

activities they choose, provided the same are not competitive with [Lystn]."

*Id.* at ¶ 13. Sections 8.2 and 10.2 of the Agreement set forth restrictive covenants and define confidential information as "information . . . in the nature of trade secrets or that is otherwise confidential, the release of which may be damaging to [Lystn]." Agreement, 4/12/10, § 8.2.

In November 2016, Stone and Hill entered into a Shareholders' Agreement for Appellee Integrative (Integrative Agreement) which purported to govern the business affairs of Integrative, an S-Corporation that held certain real property used in Answers' business operations. The Integrative Agreement contains a covenant of confidentiality similar to that contained in the Agreement.[6]

In February 2021, Stone and Hill gave a transfer notice to four other Lystn members and to Lystn's corporate counsel. *See* Complaint (21-11790), 7/21/21, at ¶ 16. In the notice, Stone and Hill stated that they wished to transfer their member interests in Lystn and resign as a managing member and employee, respectively. *Id.* at ¶ 17. Under the Agreement, once a transfer notice has been received, Lystn and the transfer-member "shall negotiate in good faith to determine the purchase price for the [transfer-member's] membership interest." Agreement, 4/12/10, at ¶ 7.7.1. On March 1, 2021, Stone and Hill requested copies of the Lystn-affiliated companies' articles of incorporation, bylaws, operating agreements, shareholders'

---

[6] While the Agreement was interpreted, construed, and enforced under Delaware law, the Integrative Agreement was construed, enforced, and interpreted under the laws of the Commonwealth of Pennsylvania.

agreements, employment agreements, and documents reflecting the companies' capitalizations and ownership.

On March 5, 2021, invoking the "Buyout Provision" under the Agreement, the Lystn members voted for Lystn to exercise a purchase option for Hill's and Stone's membership interests, that consisted of 26% and 11% shareholdings, respectively. On April 26, 2021, Stone and Hill resigned from Lystn and its affiliated companies. Stone and Hill publicly announced their resignation from Lystn on May 4, 2021.

In May 2021, Stone and Hill organized Appellant Initial, LLC (Initial), a direct competitor of Lystn, that operates under the name "Kure Pet Food" (Kure). Stone and Hill were members of Initial.

On July 21, 2021, Stone and Hill filed a lawsuit (First Action) against the Lystn Parties, which was docketed in the trial court at No. 21-11790 (11790), seeking declaratory and injunctive relief and specific performance to compel completion of their buyout, claiming that the Lystn Parties had breached the Agreement and the implied covenant of good faith and fair dealing by: (1) willfully not complying with sections 7.7.1 (Agreed Purchase Price for Stone's and Hill's Membership Interests) and 7.7.2 (Fair Market Value of Stone's and Hill's Membership Interests) of the Agreement; (2) failing to hire an appraiser to determine an equity valuation in order to interfere with them seeking employment in the pet food industry; and (3) willfully not complying with the

buyout provisions in the Lystn Parties' operating agreement(s)[7] in order to interfere with or prevent them from seeking employment in the pet food industry. *See* Complaint (11790), 7/21/21, at ¶¶ 41-42.

Substantively, Stone and Hill's complaint asserted that the Lystn non-compete clause was unenforceable as a matter of law as applied to its members who are not employed by the LLC and do not participate in its management. *See id.* at ¶ 45. The complaint also alleged that the Agreement's non-compete clause "has no geographical or temporal limitations on its face and restricts all Members for the duration of their natural lives and whether or not employed by Lystn or participating in the management of Lystn, unless and until the LLC is dissolved and wound-up." *Id.* at ¶ 14. Finally, Stone and Hill alleged that because they "complied with all terms and conditions" of Lystn's buyout provisions, they "should be free to compete in the open market within the pet food industry and that "[i]n order to find gainful employment, [they] intend to work in the pet food industry." *Id.* at ¶¶ 38-40.

On August 19, 2021, the Lystn Parties filed a separate action (Second Action) docketed in the trial court at No. 21-12980 (12980), seeking money damages and equitable relief against Stone, Hill, Initial, Constanzia Levitsky,

---

[7] The complaint also alleged that F4L had adopted Integrative's shareholders' agreement by reference, and that those operating agreements "have substantially the same terms as Lystn's Operating Agreement." *Id.* at ¶¶ 27-28.

and Cocovinna, LLC.[8]  In the complaint in the Second Action, the Lystn Parties sought to enjoin Stone and Hill from using Lystn's trade secrets, prevent them from any further involvement in Initial, and mandate that they turn over any information, documentation, or log-ins, as well as other hardware that Lystn needs to access their computer files to operate.  *Id.*  The Lystn Parties claimed that Stone and Hill were obtaining economic value from the use of their processes and methods in the production of raw pet food.  *See* Lystn Companies' Brief in Support of Petition for Preliminary Injunction, 10/19/21, at 17.  The Second Action also sought money damages and equitable relief against Initial, alleging that Initial was a direct competitor with Lystn, for "actions taken in conjunction with [the other defendants named in the complaint]."  Complaint in Second Action (12980), 8/19/21, at 2.[9]

---

[8] Levitsky, the principle founder of Cocovinna, served as Lystn's marketing and branding agent and strategist.  In that role, Lystn alleges that Levitsky had access to "all sensitive proprietary [i]nformation and [d]ocumentation of Lystn [and] also had unique access to Lystn's website and social media pages, through control of its log-ins and passwords."  *See* Amended Complaint (12980), 9/24/21, at 4.  The complaint also alleged that following Stone and Hill's notice to transfer their Lystn membership interests and resignations, "Co[nstanzia] chose to align herself with [] Stone and Hill [and] deliver[ed] the [i]nformation and [d]ocumentation of Lystn[]'s onto laptop(s) and/or desktops and/or hard drive and/or some other cloud storage site(s) . . ., together with administrative access log-in information and passwords to Lystn's work files and website and many social media sites [to Stone and Hill.]"  *Id.* at 4-5.  Finally, Lystn alleged that Constanzia used its information to "aid [Stone and Hill in] develop[ing] Initial" a competitor of Lystn[8] and, despite "repeated demands," Constanzia "has refused to provide any such [i]nformation and [d]ocumentation, [c]omputer devices or [l]og[-i]ns to the current management of Lystn."  *Id.* at 5.

[9] On September 24, 2021, the Lystn Parties filed an amended complaint.

On August 19, 2021, at trial court docket 12980, the Lystn Parties filed a petition seeking special and injunctive relief to enjoin Initial from manufacturing, distributing, and/or selling raw and/or fermented pet food products that competed with Lystn's products, and also to prohibit Stone and Hill from consulting with Initial or any other raw pet food company. Six days later, on August 25, 2021, Stone and Hill filed a petition for a preliminary injunction at docket number 11790 seeking to enjoin the Lystn Parties from enforcing certain covenants within the Agreement. On August 30, 2021, the trial court consolidated the cases at 11790 and 12980 "for purposes of any special or preliminary injunction, all discovery and pre-trial matters, and trial." **See** Orders at 11790 and 12980, 8/30/21. That same day, the court made an entry to the docket at 12980 that "all further entries" on the two dockets would be entered at 11790.

On September 28, 2021, the Lystn Parties filed a motion asking the court to immediately issue an interim special injunction prohibiting Stone, Hill, and Initial from selling their products, direct Appellants to immediately recall any of their products that had already been shipped to or delivered to distributors or retailers, and making Initial account for and establish an injunction bond whereby Initial would pay into court "all gross sales proceeds from the sale of its products . . . pending the outcome of [the preliminary injunction proceedings]." **See** Motion for Interim Injunctive Relief, 9/28/21, at 4 (unpaginated). Following twelve non-consecutive days of hearings that spanned more than six weeks, the trial court entered an order on October 21,

2021, docketed only at 11790, granting the Lystn Parties' petition for special

and preliminary injunctive relief.[10]

_____

[10] The order states, in full:

> (1) The Lystn Parties' Petition for Special and Preliminary Injunctive Relief is **GRANTED**, as follows:
>
> (a) Within seven days of the date of this Order, [Stone and Hill] and Initial shall identify and provide to counsel for the Lystn Parties the following information in their possession or in the possession of any of their agents, employees, or consultants:
>
> (i) All log-in credentials, passwords, and/or such other information required to access computer-based and cloud-based data and social media accounts owned by, and/or used in the business operations of any of the Lystn Parties;
>
> (ii) Any materials, whether in digital or hardcopy format, relating to marketing, sales, promotions, pricing, and/or branding, developed for, owned by, and/or used in the business operations of, any of the Lystn Parties;
>
> (iii) Any distributor lists, supplier/sub-supplier lists, retailer lists, and/or other customer lists created by the Lystn Companies or any agents, employees, or consultants thereof;
>
> (iv) Any product formulations, processes, standard operating procedures, and/or food safety plans developed by the Lystn Companies or any agents, employees, or consultants thereof for products manufactured by any of the Lystn Companies; and
>
> (v) All intellectual property, confidential and non-confidential business communications, trademarks, service marks, [and] copyrighted materials owned by, and/or used in the business operations of any of the Lystn Parties.
>
> (b) Pending a final hearing, or until further of this Court, [Stone and Hill] are enjoined and prohibited from:
>
> (i) Providing consulting services to Initial or any other business relating to the manufacture, distribution, and/or sale of raw and/or fermented pet food products competitive to those sold by

*(Footnote Continued Next Page)*

- 11 -

the Lystn Companies, including raw fermented goat's milk, raw fermented meat products, raw kefir, fermented bone broths and stocks, fermented tea/kombucha, and/or raw cheese, intended for animal consumption;

(ii) Possessing an ownership interest in, or consulting with/for, any business engaged in the development or use of whey fermentation and/or whey intervention as a means of pathogen inhibition in manufactured food products for pet or human consumption;

(c) Pending a final hearing on the merits, or until further [order] of this Court, Initial is enjoined and prohibited from manufacturing, distributing, and/or selling raw and/or fermented pet food products competitive to those sold by the Lystn Companies, including raw fermented goat's milk, raw fermented meat products, raw kefir, fermented bone broths and stocks, fermented tea/kombucha, and/or raw cheese, intended for animal consumption;

(d) [Stone and Hill] and Initial shall hold in strict confidence any and all information regarding product formulations, processes, and/or standard operating procedures for products manufactured by any of the Lystn Companies;

(e) Nothing in this Order shall be deemed to prohibit [Stone and Hill], Initial, or its individual members from pursuing employment, consulting, or business opportunities in other areas of the pet or human food industries so long as they do not relate to the raw and/or fermented pet food products competitive to those sold by the Lystn Companies; and

(2) Within ten days of the date of this Order, the Lystn Companies shall file a bond or deposit legal tender with the Prothonotary in the amount of $500,000.00, in accordance with Pa.R.C.P. 1531(b).

(3) [Stone and Hill's] Petition for Preliminary Injunction is **DENIED**.

Order, 10/21/21, at 1-2.

- 12 -

Stone and Hill filed a timely notice of appeal, at docket number 11790, from the October 21, 2021 order granting the Lystn Parties' preliminary injunction. The notice of appeal listed both docket numbers. Similarly, Initial filed a notice of appeal at docket number 11790, from the preliminary injunctive order, also listing both docket numbers.[11] Our Court issued rules to show cause why the notices of appeal did not run afoul of *Commonwealth v. Walker*, 185 A.3d 969, 977 (Pa. 2018), that requires the filing of separate notices of appeal for multiple docket numbers. Stone, Hill, and Initial responded to the rules to show cause stating that their notices of appeal complied with the holding in *Always Busy Consulting, LLC v. Babford & Co., Inc.*, 247 A.3d 1033 (Pa. 2021), which permits the filing of a single notice of appeal of one order entered at a lead docket for "consolidated civil matters

---

[11] Pending appeal, our Court temporarily stayed the preliminary injunction, entering an order that instructed the trial court to provide an opinion, following argument, explaining why it denied Appellants' emergency application for stay pending appeal and motion for reconsideration. *See* Order, 10/27/21. *See also Pa. Public Util. Com. v. Process Gas*, 467 A.2d 805, 808-09 (Pa. 1983) (to succeed on stay pending appeal, petitioner must show: (1) strong showing of likelihood of prevailing on merits of appeal; (2) they will suffer irreparable injury if not granted stay; (3) stay will not substantially harm other interested parties; and (4) stay will not adversely affect public interest). On November 5, 2021, the trial court issued a 7-page opinion explaining its reasons for denying the emergency stay application and included within that opinion its 75-page "Findings of Fact, Discussion, and Conclusions of Law" (attached as Exhibit "A") supporting its order granting the Lystn Parties preliminary injunctive relief. On November 10, 2021, Lystn filed an emergency application to vacate the temporary stay and reinstate the preliminary injunction pending appeal. On November 10, 2021, our Court vacated the stay order and reinstated the preliminary injunction effective immediately.

where all record information necessary to adjudication of the appeal exists, and which involves identical parties, claims[,] and issues[.]" *Id.* at 1043. On December 9, 2021, this Court discharged the rules to show cause and permitted the appeals to proceed. *See* Orders (1402 MDA 2021 & 1403 MDA 2021), 12/9/21, at 1.

On December 10, 2021, our Court consolidated the appeals at 1402 MDA 2021 and 1403 MDA 2021. *See* Pa.R.A.P. 513. However, the merits panel assigned to the consolidated appeals disagreed with Stone, Hill, and Initial's position that the notices of appeal were properly filed under *Always Busy*. *See Stone, et al. v. Lystn, LLC, et al.*, 284 A.3d 908 (Pa. Super. 2022) (Table). Specifically, our Court concluded that because the two actions (11790 and 12980) did not have identical parties, the exception to the *Walker* rule did not apply. *Id.* at *4. However, rather than quashing the appeals, our Court remanded the case and instructed the trial court to enter its preliminary injunctive order on the docket at 12980. Once that order was entered on that docket, we directed that Stone, Hill, and Initial were to file notices of appeal from the entry of that newly docketed order (only listing 12980 in the caption of the notices). The trial court was directed to docket the new notices of appeal and forward them, with the new order, to this Court's Prothonotary in a supplemental record. This Court would then docket the appeals, assign them docket numbers, and consolidate them with the appeals at 1402 MDA 2021 and 1403 MDA 2021. *See id.* at *9-*10.

The trial court and parties complied with our Court's directive and, on August 25, 2022, Appellants filed notices of appeal, only listing 12980 in the captions, from the trial court's August 16, 2022 order granting preliminary injunctive relief at docket 12980. *See* 1254 MDA 2022 and 1255 MDA 2022. Thus, all appellants have filed proper notices of appeal from the trial court's preliminary injunctive order.

On appeal, Stone and Hill present the following issues:

(1) Did the [trial] court [] err by granting a preliminary injunction against [Stone and Hill] including as follows:

   (a) Where [] Stone and [] Hill did not have any valid noncompetition or confidentiality agreements with Appellees, and did not owe fiduciary duties, as dissociated members who resigned their officer positions?

   (b) Where there was no trade secret in holistic, uncooked pet food available in the market and the products were readily capable of reverse-engineering, and all aspects of production were publicly disclosed by Appellees?

   (c) Where Biodynamic Farms, LLC, Integrative Green Solutions, Incorporated, or Food for Life Trucking & Logistics Company did not have standing to sue for misappropriation of trade secret?

   (d) Where the preliminary injunction provided no exception for information acquired by independent means, including reverse-engineering?

   (e) Where there is no evidence to show tortious interference in contractual relationships or why the damages remedy was inadequate?

   (f) Where the [trial] court [] gave an unbargained-for non-disparagement agreement by restraining Appellants [from] engaging in constitutionally-protected speech wh[en], in their opinion, [] Hill had bad leadership ability?

- 15 -

Stone and Hill Brief, at 5-6. Initial presents the following additional issues:

> (1) Did the [trial] court [] err by granting a preliminary injunction against Initial, LLC, including as follows:
>
>> (a) Where neither Initial, LLC[,] nor its five members had any valid noncompetition agreement with Appellees?
>>
>> (b) Where a confidentiality agreement signed by one of Initial, LLC's suppliers with Lystn, LLC[,] had expired and otherwise the scope of confidential information is void as facially overbroad and without any temporal restrictions?
>>
>> (c) Where the record does not support any implied duty [of] confidentiality for the five Amish members of Initial, LLC, where the products of Lystn, LLC[,] had been in the market for many years?
>>
>> (d) Where, contrary to the record, the court below gratuitously imposed enterprise[-]piercing liability on Initial, LLC[,] for any purported violations of noncompetition or confidentiality agreements by [] Stone and [] Hill?

Initial Brief, at 5-6.[12]

"Appellate courts review the grant of a preliminary injunction for an abuse of discretion." ***Duquesne Light Co. v. Longue Vue Club***, 63 A.3d 270, 275 (Pa. Super. 2013) (citation omitted).

As our Supreme Court has emphasized:

---

[12] Stone, Hill, and Initial all raise the same, following issues: Was the grant of a preliminary injunction improper where: (1) there was no trade secret in holistic, uncooked pet food available in the market and the products were readily capable of reverse-engineering, and all aspects of production were publicly disclosed by Appellees, and (2) the preliminary injunction provided no exception for information acquired by independent means, including reverse-engineering? Stone and Hill Brief, at 5-6; Initial Brief, at 5.

- 16 -

> The standard of review applicable to preliminary injunction matters . . . is highly deferential. This highly deferential standard of review states that in reviewing the grant or denial of a preliminary injunction, an appellate court is directed to examine the record to determine if there were any apparently reasonable grounds for the action of the court below.

*In re Trust Under Deed of Trust of Jack*, 284 A.3d 451, 455 (Pa. Super. 2022) (internal quotation marks omitted). Furthermore,

> To establish entitlement to injunctive relief, a party must show that: (1) an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; (2) greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; (5) the injunction it seeks is reasonably suited to abate the offending activity; and (6) a preliminary injunction will not adversely affect the public interest. *See Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, [] 828 A.2d 995, 1001 (Pa. 2003). For a preliminary injunction to issue, every one of these prerequisites must be established; if the petitioner fails to establish any one of them, there is no need to address the others. *Allegheny Cnty. v. Commonwealth*, [] 544 A.2d 1305, 1307 (Pa. 1988).

*Id.*, at 457.

While this appeal was pending, a jury returned a verdict in favor of the Lystn Parties, on August 12, 2022, finding: (1) the Lystn Parties had a proprietary interest in the formulas of its pet food products; (2) Stone, Hill, and Initial misappropriated the Lystn Parties' trade secreted formulas in

violation of the Pennsylvania Uniform Trade Secrets Act (PUTSA);[13] (3) Stone and Hill breached covenants contained within the operating and shareholder Agreements with Lystn; (4) Stone and Hill interfered with the Lystn Parties' actual or prospective contractual relations with employees, suppliers, and/or distributors; and (5) the Lystn Parties were harmed by Stone, Hill, and Initial's actions. The jury awarded $2,200,000.00 in damages to the Lystn Parties. The parties filed timely cross-motions for post-trial relief. The trial court molded the verdict to include attorneys' fees in the amount of $300,000.00 for Appellants' willful PUTSA violations. The court also awarded mandatory PUTSA prejudgment interest in favor of Stone ($59,964.60) and the now-deceased Hill ($114,341.40) as it related to the damages awarded for Lystn's breach of the Agreement. All other post-trial relief was denied.

On December 12, 2022, the trial court entered an order granting permanent injunctive relief,[14] in favor of the Lystn Parties and against Stone, Hill, and Initial, after concluding that Stone and Hill had breached the non-compete provision in the Agreement and that Stone, Hill, and Initial had

---

[13] **See** 12 Pa.C.S.A. §§ 5301, *et seq.*

[14] "[A] court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law." **Dovin v. Hony Brook Golf Club L.P.**, 325 A.3d 1282, 1292 (Pa. Super. 2024), citing **Youst v. Keck's Food Serv., Inc.**, 94 A.3d 1057, 1078 (Pa. Super. 2014) (court entered permanent injunction, prohibiting defendants from flooding plaintiff's property following jury verdict in favor of plaintiff that awarded money damages due to defendants' nuisance).

willfully and wantonly misappropriated Lystn's proprietary formulas in violation of the PUTSA. *See* Permanent Injunction Order, 12/12/22, at 1-2.[15]

---

[15] The order also provides the following mandates:

> (1) The Kure Defendants are permanently enjoined and prohibited from using or disclosing Lystn's pet food formulas for a commercial purpose without the express consent of Lystn;

> (2) Initial is permanently prohibited and enjoined from manufacturing, distributing, and/or selling raw fermented goat's milk, raw fermented meat products, raw fermented kefir, fermented bone broths and stocks, and/or fermented tea/kombucha for animal consumption using identical or substantially similar formulas as those used by Lystn;

> (3) Hill/Stone are permanently enjoined and prohibited from consulting for any business or themselves regarding the development of formulas or food programs for products that are identical or substantially similar to those used by Lystn, including fermented goat's milk, raw fermented meat products, raw fermented kefir, fermented bone broths and stocks, and/or fermented tea/kombucha for animal consumption;

> (4) The Kure Defendants are enjoined and prohibited from misappropriating any other confidential information derived from their respective ownership, employment, or affiliation with Lystn for a commercial purpose; "misappropriation" shall have the same meaning as set forth in [s]ection 5303 of PUTSA; and

> (5) Nothing in this Order shall be deemed to prohibit the Kure Defendants or any of Initial's individual members from pursuing employment, consulting, or business opportunities in other areas of the pet or human food industries so long as they do not relate to the raw fermented pet food products identical or substantially similar in formulation to those sold by the Lystn Companies.

Permanent Injunction Order, 12/12/22, at 2. The order also stated that the parties were not prevented from providing products or services to Lystn. *See id.* at 2 n.1.

Unlike a preliminary injunction, a permanent injunction does not require proof of immediate irreparable harm.[16]  *PG Publ'g Co., Inc. v. Pittsburgh Typographical Union #7*, 304 A.3d 1227, 1234 (Pa. Super. 2023) (citations omitted).  Moreover, our Court has recognized that "a preliminary injunction is superseded by a decision on the merits [] and terminates upon the issuance of a permanent injunction."  *Id.* at 1238, citing *Den-Tal-Ez, Inc. v. Siemens Cap. Corp.*, 566 A.3d 1214, 1217 n.1 (Pa. Super. 1989) (en banc) (citations omitted).  *See also Pennsylvania Energy Vision, LLC v. South Avis Realty, Inc.*, 120 A.3d 1008, 1012 (Pa. Super. 2015) (appeal of preliminary injunction moot where trial court issued final, permanent injunction).

_____

[16] To be entitled to a permanent injunction, a party must establish a clear right to relief, and must have no adequate remedy at law, *i.e.*, damages that will not compensate for the injury.  *Liberty Place Retail Assocs., L.P. v. Israeline Sch. Of Universal Practical Knowledge*, 102 A.3d 501, 505-06 (Pa. Super. 2014).

> A trial court may grant a permanent injunction only when the party seeking the injunction establishes that its right to relief is clear, that the injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from denying rather than granting the injunctive relief.  *Kuznik v. Westmoreland Cnty. Bd. of Comm'rs*, [] 902 A.2d 476, 489 (Pa. 2006).  Ultimately, the grant or denial of a permanent injunction will turn on whether the lower court properly found that the party seeking the injunction established a clear right to relief as a matter of law.  *Buffalo Twp.* [*v. Jones*], 813 A.2d [659,] 664 n.4 [(Pa. 2002)].  We must accept and defer to the trial court's factual findings if the findings are supported by competent evidence.  *Liberty Place* [], 102 A.3d [at] 506 n.4[.]

*PG Publ'g Co. v. Pittsburgh Typographical Union #7*, 321 A.3d 1013, 1024 (Pa. Super. 2024) (quotation marks omitted).

Instantly, the trial court issued its permanent injunction after a full jury trial was heard on the merits of whether Appellants "*should not have been engaging in the conduct that was enjoined*" by the preliminary injunction— willful misappropriation of Lystn's proprietary formulas. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 315 (1999) (emphasis in original). While the permanent injunction may have been somewhat narrower in scope than the preliminary injunctive order,[17] the same fundamental substantive issues formed the basis for preliminary and permanent injunctive relief. *Cf. id.* (exception to mootness doctrine applies where petitioners' substantive challenge to preliminary injunction addressed different matter than permanent injunction addressed); *College Watercolor Grp. Inc. v. William H. Newbauer, Inc.*, 360 A.2d 200, 208 (Pa. 1976) (injunctive bond should not be dissolved because permanent injunction[18] issued much narrower in scope than preliminary injunction).

---

[17] The three primary differences between the preliminary and permanent injunctions were: (1) "raw cheese" was no longer included in the permanent injunction order; (2) the preliminary injunction precluded Appellants from manufacturing/developing certain categories of raw pet food products where the permanent injunction precludes Appellants' use of Appellees' formulas and processes; and (3) the parties were prohibited from selling products "identical or substantially similar to those used by Lystn," as opposed to products that were "competitive to" Lystn's. The third change provides Stone and Hill with the increased flexibility of earning a living on a permanent basis. *See* Trial Court Opinion, 9/27/23, at 10.

[18] While the permanent injunction in *College Watercolor* solely enjoined appellants from utilizing appellee's trade secrets involving watercolor
*(Footnote Continued Next Page)*

Thus, we conclude that the permanent injunction superseded the preliminary injunction, rendering any appeal from the preliminary injunction moot. *Shirley v. Pa. Legis. Reference Bureau*, 318 A.3d 832, 858 (Pa. 2024).

Orders affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/01/2025

_____

reproductions, the court's preliminary injunction in that case was much broader, restraining appellants from:

> selling, displaying[,] or giving away for promotional purposes, any watercolors, watercolor originals, copies, prints[,] or other reproductions in any form belonging to or provided by plaintiff, or copies from or otherwise taken from any materials owned or supplied to defendants by plaintiff, or any such materials manufactured or processed by said defendants, or either of them directly or indirectly, by methods heretofor[e] devised by said defendants, said methods having utilized trade secrets improperly obtained from the plaintiff, and said defendants are hereby permanently enjoined from infringing upon plaintiff's registered trademark "Gray's."

*Id.* at 202. Comparatively, the permanent injunction in the instant matter is much less narrow in scope than the preliminary injunction in *College Watercolor*.